IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| POLAR ELECTRO OY, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> SUUNTO OY, AMER SPORTS WINTER & ) <br> OUTDOOR d/b/a SUUNTO USA, and ) <br> FIRSTBEAT TECHNOLOGIES OY., ) <br> ) <br> Defendants. ) <br> ) | Civil Action No. 11-1100-GMS |

## MEMORANDUM

### I. INTRODUCTION

Plaintiff Polar Electro Oy ("Polar") filed this patent infringement lawsuit against Defendants Suunto Oy ("Suunto"), Amer Sports Winter & Outdoor ("ASWO"), and Firstbeat Technologies Oy ("Firstbeat") (collectively, "Defendants"). (D.I. 1). Polar alleges that the Defendants infringe U.S. Patent Nos. 5,611,346 and 6,537,227 ("patents-in-suit").

Before the court is Suunto's motion to dismiss for lack of personal jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(2). (D.I. 58). Suunto originally filed its motion on January 26, 2012. (D.I. 22). The court issued an Order on September 15, 2014, holding Suunto's motion in abeyance while the parties engaged in jurisdictional discovery. (D.I. 37). On March 13, 2015, Suunto filed a supplemental brief, renewing its original motion to dismiss for lack of personal jurisdiction.[1] (D.I. 58.) On May 12, 2015, the court issued a Memorandum Opinion and Order granting Suunto's motion to dismiss for lack of personal jurisdiction. (D.I. 75, 76). The

---

[1] Firstbeat also filed a motion to dismiss for lack of personal jurisdiction in 2012. (D.I. 25). Firstbeat withdrew its motion after the completion of jurisdictional discovery. (D.I. 72).

court determined that jurisdiction over Suunto was proper under the Delaware long arm statute. *Id.* The court, however, did not find that Suunto had the necessary minimum contacts with Delaware, required by the due process clause, to exercise personal jurisdiction. *Id.* Thereafter, the court granted Polar's Motion for Entry of Final Judgment Pursuant to Federal Rule of Civil Procedure 54(b) and entered judgment in favor of Suunto Oy. (D.I. 81). On August 17, 2015, Polar filed its Notice of Appeal to the Federal Circuit. (D.I 83). On appeal, the Federal Circuit vacated the court's determination that personal jurisdiction over Suunto was lacking. The Federal Circuit determined that Suunto's purposeful shipping to Delaware supported a finding of minimum contacts with the state, and they remanded the case for a determination of whether exercising jurisdiction over Suunto would be reasonable and fair. *See Polar Electro Oy v. Suunto Oy*, 829 F.3d 1343, 1351 (Fed. Cir. 2016). For the reasons that follow, the court finds that exercising jurisdiction would be unfair and unreasonable.

## II. BACKGROUND

Polar is a company operating and existing under the laws of Finland, with its principal place of business in Kempele, Finland. (D.I. 1, ¶ 1). Suunto is also a Finnish company, with its principal place of business in Vaanta, Finland. *Id.* ¶ 2. Polar alleges that Suunto's accused products infringe the patents-in-suit, which relate generally to heart-rate monitoring for athletic performance applications. *Id.* ¶ 13–15.

Suunto does not sell its accused products directly in the United States. (D.I. 58 at 4). ASWO, a Delaware corporation, contracts with Suunto to distribute Suunto products in the United States. *Id.* ASWO is responsible for working with brick-and-mortar retailers in the United States (including Delaware), but it does not solicit sales in Delaware. *Id.* ASWO contracts with Metro Mountain Sports, a third party, independent sales agency, to solicit sales from retailers of Suunto

2

products in Delaware. (D.I. 61 at 9). There are two retailers in Delaware—with a total of three retail locations—that sell the allegedly infringing products. (D.I. 58 at 4). Customers can use the "Dealer Locator" feature of the Suunto website—suunto.com/us—to locate the physical addresses of these retailers in Delaware. *Id.* ASWO maintains that feature. *Id.*

Moreover, ASWO fulfills online orders of Suunto products made through the Suunto website, via its own e-commerce platform. *Id.* 4-5. ASWO pays a hosting fee for the Suunto.com/us portion of the website. *Id.* Therefore, although U.S. customers search for products on the Suunto website, they actually transact with ASWO to make a purchase. *Id.* at 4. To date, eight e-commerce transactions have been made in Delaware. *Id.*

Products sold on ASWO's e-commerce platform are shipped to the ASWO warehouse in Tennessee. *Id.* at 3. Until recently, shipments for ASWO's retail customers have also been delivered to the Tennessee warehouse. *Id.* Now, ASWO directs the retail shipments to a U.S. port and then on to the retail customer. *Id.* ASWO takes title and assumes the risk of loss for all Suunto products at Suunto Oy's shipping dock in Vantaa, Finland. *Id.* So, while Suunto is responsible for packaging, ASWO bears the cost of shipping and determines where to ship the products. *Id.* Before ASWO takes title, Amer Sport European Center actually takes title to the products Suunto manufactures, and moves them to finished goods before transferring title to ASWO. *Id.* When the e-commerce products arrive at ASWO's Tennessee warehouse, ASWO then directs shipment from the warehouse to the purchasers. *Id.*

Suunto has other contacts with the United States at large, but not specifically with Delaware. In particular, Suunto has worked with a U.S. market research group to study the U.S. market generally. *Id.* at 9. ASWO, however, is responsible for the creation and execution of its own sales and marketing plans for the Suunto products in the U.S. *Id.* at 5.

3

Further, ASWO is an independent company that contracts with Suunto to distribute Suunto's products in the United States. *Id.* at 6. ASWO is not an agent of Suunto—Suunto does not control or direct the day-to-day operations at ASWO, and it does not finance ASWO. *Id.*

## III. STANDARD OF REVIEW

In patent cases, the Federal Circuit reviews the district court's personal jurisdiction determination without deference. The Federal Circuit applies their own law to those jurisdictional issues that are "intimately involved with the substance of the patent laws." *Akro Corp. v. Luker*, 45 F.3d 1541, 1543 (Fed. Cir. 1995).[2]

The plaintiff bears the burden of establishing that the defendants are properly subject to the court's jurisdiction. *See J. McIntyre Mach., Ltd. v. Nicastro*, 131 S. Ct. 2780, 2792 (2011) (Breyer, J., concurring); *ICT Pharms., Inc. v. Boehringer Ingelheim Pharms., Inc.*, 147 F. Supp. 2d 268, 270–71 (D. Del. 2001). When jurisdictional discovery is conducted, there is no jurisdictional hearing, and the jurisdictional facts are in dispute, the plaintiff must make only a prima facie showing of jurisdiction. *Celgard, LLC v. SK Innovation Co.*, 792 F.3d 1373, 1378 (Fed. Cir. 2015). "Under the prima facie standard, the court must resolve all factual disputes in the plaintiff's favor." *Polar Electro*, 829 F.3d at 1347–48 (Fed. Cir. 2016).

---

[2] Although 28 U.S.C. § 1295(a)(1) gives the Federal Circuit authority to review cases involving patent law, the court respectfully points out that issues concerning personal jurisdiction are not unique to patent cases. The court recognizes that the Federal Circuit previously articulated a reason for applying its own law to questions of personal jurisdiction: The issue of personal jurisdiction "is a critical determinant of whether and in what forum a patentee can seek redress for infringement of its rights." *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1564 (Fed. Cir. 1994) Further, the Federal Circuit has stated that the key reason they apply their own law in the area of personal jurisdiction is to "promote [their] mandate of achieving national uniformity in the field of patent law" because "[t]he regional circuits have not reached a uniform approach" to personal jurisdiction and the stream of commerce theory. *Id.* Time and again, however, the Federal Circuit has "decline[d] to decide which version of the stream-of-commerce theory should apply because . . . the result would be the same under all articulations of the stream-of-commerce test." *Polar Electro Oy v. Suunto Oy*, 829 F.3d 1343, 1350 (Fed. Cir. 2016). This tasks the district courts with scouring Federal Circuit precedent to find a case identical to the one before it. Inevitably, there will be key factual differences, leaving the district courts with little guidance on whether the exercise of personal jurisdiction comports with due process. The approach to personal jurisdiction within the sphere of patent law is, resultantly, anything but uniform.

Personal jurisdiction is derived from two separate sources: state statutory law and U.S. constitutional due process. *Inamed Corp. v. Kuzmak*, 249 F.3d 1356, 1359–60 (Fed. Cir. 2001). The Delaware long-arm statute provides in relevant part:

> [A] court may exercise personal jurisdiction over any nonresident, or a personal representative, who in person or through an agent:
> 1. Transacts any business or performs any character of work or service in the State;
>
> . . . .
>
> 3. Causes tortious injury in the State by an act or omission in this State;
> 4. Causes tortious injury in the State or outside of the State by an act or omission outside the State if the person regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from services, or things used or consumed in the State;

Del. Code Ann. tit. 10, § 3104(c). The statute has been construed "broadly to confer jurisdiction to the maximum extent possible under the Due Process Clause." *Merck & Co., Inc. v. Barr Labs., Inc.*, 179 F. Supp. 2d 368, 372 (D. Del. 2002) (citing *Hercules Inc. v. Leu Trust & Banking Ltd.*, 611 A.2d 476, 480–81 (Del. 1992)).

Due process must also support the exercise of personal jurisdiction. In addition to a showing of "purposeful minimum contacts," due process requires that the exercise of personal jurisdiction be "reasonable and fair." *Nuance Commc'ns, Inc. v. Abbyy Software House*, 626 F.3d 1222, 1231 (Fed. Cir. 2010). "While the plaintiff bears the burden to establish minimum contacts, upon [that] showing, defendants must prove that the exercise of jurisdiction is unreasonable." *Elecs. For Imaging, Inc. v. Coyle*, 340 F.3d 1344, 1350 (Fed. Cir. 2003). To determine whether exercise of jurisdiction is unreasonable, courts may evaluate: (1) "the burden on the defendant;" (2) "the forum State's interest in adjudicating the dispute;" (3) "the plaintiff's interest in obtaining convenient and effective relief;" (4) "the interstate judicial system's interest in obtaining the most

5

efficient resolution of controversies;" and (5) the "shared interest of the several States in furthering fundamental substantive social policies." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980) (internal citations omitted). It will be a rare case where a court finds minimum contacts, but also finds that maintenance of the suit would offend "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945). Nonetheless, the facts must be weighed on a case-by-case basis to determine whether personal jurisdiction is fair and reasonable. "The 'quality and nature' of an interstate transaction may sometimes be so 'random,' fortuitous,' or 'attentuated' that it cannot fairly be said that the potential defendant 'should reasonably anticipate being haled into court' in another jurisdiction." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 486 (1985) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

## IV. DISCUSSION

Once a court finds that minimum contacts exist between the defendant and the forum State, the court must then consider those contacts "in light of other factors to determine whether the assertion of personal jurisdiction would comport with 'fair play and substantial justice.'" *Burger King Corp.*, 471 U.S. at 476 (quoting *International Shoe Co.*, 326 U.S. at 320. Although the Court has endorsed a five factor test to ascertain the reasonableness of exercising jurisdiction, the Court has also noted that it "long ago rejected the notion that personal jurisdiction might turn on 'mechanical tests,'" *Id.* at 478 (quoting *International Shoe*, 326 U.S. at 319), and instead teaches that "'the facts of each case must [always] be weighted' in determining whether personal jurisdiction would comport with 'fair play and substantial justice.'" *Id.* at 486 (quoting *Kulko v. California Superior Court*, 436 U.S., 84, 92 (1978)). Thus, the court will be guided, but not limited, by the five factors.

## A. Burden on Defendant

Typically, courts under the "burden on the defendant" prong of the five-factor test will analyze the burden of "traversing the distance" between a company's headquarters and the district where the court is located. *See Synthes (U.S.A.) v. G.M. Dos Reis Jr. Ind. Com de Equip. Medico*, 563 F.3d 1285, 1299 (Fed. Cir. 2009). Accordingly, courts look to whether the defendant has previously traveled to the forum to determine if such travel would be "unduly burdensome." *Id.* Most courts have recognized, however, that "progress in communication and transportation [have] made the defense of a lawsuit in a foreign tribunal less burdensome." *World-Wide Volkswagen*, 444 U.S. at 294 (quoting *Hanson*, 357 U.S. at 251). While the court acknowledges that case law, it finds that it must also consider other case-specific facts to fully, and fairly, analyze the true burden to Defendant here.

The burden on Suunto is undoubtedly high. Suunto has no physical presence in the United States, let alone Delaware—Suunto lacks real estate, employees or agents in Delaware. (D.I. 24 ¶ 5). The record also suggests that Suunto never directly solicited sales for its products within Delaware. *Id.* Suunto is not an out-of-state manufacturer, operating elsewhere within the United States, but, is instead, a Finnish company with its principal place of business in Finland. *Id.* Not only would Suunto have to travel to Delaware to defend itself in this lawsuit, it would also have to submit to a foreign nation's judicial system. Polar downplays the significance of this factor by highlighting Suunto's willingness to travel to Utah—which is 2,000 miles further away from Finland than Delaware. (D.I. 110 at 3.) While Utah may be farther away, the state is home to ASWO's headquarters, and the state in which Suunto "structure[d] . . . [its] primary conduct with some minimum assurance as to where that conduct [would] . . . render . . . [it] liable to suit." *World-Wide Volkswagen Corp.*, 444 U.S. at 297. The court finds this last issue most significant.

7

Suunto's burden is only heavier when considered in light of its attenuated connections to Delaware. The court recognizes that it would be improper, given the Federal Circuit's directions on remand, to analyze whether Suunto has sufficient contacts with Delaware to sustain specific jurisdiction. It would also be illogical, however, to feign amnesia when it comes to Suunto's contacts with this forum. *See Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 568 (2d Cir. 1996) ("[D]epending upon the strength of the defendant's contacts with the forum state, the reasonableness component of the constitutional test may have a greater or lesser effect on the outcome of the due process inquiry.") (citing *Burger King*, 471 U.S. at 477); *see also Ticketmaster-New York, Inc. v. Alioto*, 26 F.3d 201, 210 (1st Cir. 1994) ("[T]he reasonableness prong of the due process inquiry evokes a sliding scale: the weaker the plaintiff's showing on the first two prongs (relatedness and purposeful availment), the less a defendant need show in terms of unreasonableness to defeat jurisdiction."). Notably, the due process analysis functions as a safeguard, protecting defendants "against the burden of litigating in a distant or inconvenient forum." *World-Wide Volkswagen*, 444 U.S. at 292. A key inquiry underlying the analysis of a defendant's burden is whether the defendant can "reasonably anticipate being haled into court" in the relevant jurisdiction. *See id.* at 296–97. Typically, the answer to that question is informed by the court's minimum contacts analysis. Nonetheless, the court finds that it cannot properly consider the burden on Defendant of litigating in this forum without considering whether Suunto could anticipate being subject to suit here.

The Federal Circuit found that Suunto "purposefully shipped at least ninety-four accused products to Delaware retailers, fully expecting that its products would then be sold in Delaware as a result of its activities." *Polar Electro*, 829 F.3d at 1350. Suunto's actions, according to the Federal Circuit, indicated "an intent and purpose to serve not only the U.S. market generally, but

also the Delaware market specifically." *Id.* There is no doubt that Suunto intended for its products to reach the United States. But, as the Federal Circuit acknowledged, ASWO "provided the destination addresses, took title to the goods in Finland, and directed and paid for shipping." *Id.* at 1351. Suunto exercised zero control over where its products ended up within the United States. Though the record indicates that at least ninety-four accused products ended up in the hands of Delaware retailers, that result was not by Suunto's choice or design. The Federal Circuit seemed to recognize that issue by noting that ASWO and Suunto "'*act[ed] in consort*'" to deliberately and purposefully ship the accused products to Delaware. *Id.* (quoting *Beverly Hills Fan*, 21 F.3d at 1566). While aggregating the intentions of the manufacturer and the distributor may be enough to find purposeful availment under the minimum contacts prong of the due process analysis, it may not necessarily render jurisdiction reasonable and fair.[3] Under this prong of the five-factor analysis, the court is asked to consider the burden to Suunto, specifically, not to Suunto and ASWO, collectively. When considered alone, Suunto's actions — fulfilling the orders, packaging the products, and dropping the boxes off at the port in Finland—without the addition of ASWO's actions—providing the destination addresses, directing and paying for shipping, and subcontracting with Metro to solicit sales in Delaware—it becomes clear that Suunto's intentions to target Delaware were slight, if they existed at all. The court finds it highly likely that Suunto

---

[3] The court respectfully disagrees with the Federal Circuit's conclusion, the apparent result of its adventure into fact finding, that ASWO and Suunto acted in consort. Besides contracting with ASWO to sell its products in the United States, generally, it is unclear what actions Suunto took in consort with ASWO to target Delaware, specifically. Fulfilling orders, packing products, and putting shipping labels on boxes (with addresses provided by ASWO) were all acts that Suunto took with regard to every product shipped to the U.S., not just those destined for Delaware. *See Nicastro*, 564 U.S. at 886 (finding that respondent did not establish that "McIntyre engaged in conduct purposefully directed at New Jersey" because respondent alleged only facts revealing an intention to serve the U.S. market, generally). The court further questions the constitutionality of aggregating the intentions of ASWO and Suunto in the context of this case. *See Rush v. Savchuk*, 444 U.S. 320, 332 (1980) ("The requirements of *International Shoe*, however, must be met as to each defendant over whom a state court exercises jurisdiction.").

9

did not anticipate being haled into court in Delaware, exacerbating the burden on Suunto. This factor thus weighs strongly in Suunto's favor.

**B.     Delaware's Interest in Adjudicating the Dispute**

Delaware certainly has an interest in protecting its citizens, whether corporate or individual, from the harm of patent infringing products circulating throughout the state. Every state in the United States, however, shares this interest. Here, both Suunto and Polar are Finnish companies with principal places of business in Finland. (D.I 1 ¶¶ 1, 2). With neither Polar nor Suunto being a Delaware citizen, Delaware's interest in the dispute becomes further attenuated. *See Asahi Metal Indus. Co. v. Superior Court of California, Solano Cty.*, 480 U.S. 102, 114 (1987) ("Because the plaintiff is not a California resident, California's legitimate interests in the dispute have considerably diminished.").

Polar has not demonstrated why Delaware, over all other states in which the allegedly infringing products were shipped or purchased, has a specific interest in adjudicating the dispute. Delaware may frequently hear patent cases, and thus have an expertise Polar seeks, but Delaware's specialty in patent law cannot form the basis for binding an out-of-state defendant to this particular jurisdiction. *See Walden v. Fiore*, 134 S. Ct. 1115, 1122 (2014) ("Due process limits on the State's adjudicative authority principally protect the liberty of the nonresident defendant—not the convenience of plaintiffs or third parties."); *see also Belden Techs., Inc. v. LS Corp.*, 829 F. Supp. 2d 260, 273 (D. Del. 2010) (rejecting the argument that "the District of Delaware is a good jurisdiction for both parties because it is 'commercially savvy' and 'handles a lot of patent cases'"). While ASWO is a Delaware corporation, and therefore would be at home here, aggregating ASWO's Delaware citizenship to exercise jurisdiction over Suunto would be "plainly unconstitutional." *Rush v. Savchuk*, 444 U.S. 320, 332 (1980).

Despite patent infringement allegedly occurring within Delaware's borders, the limited extent of the alleged infringement, along with neither party being a Delaware resident, weighs against the exercise of jurisdiction over Suunto.

### C. Plaintiff's Interest in Obtaining Effective Relief

It is undeniable that if Polar's patents were infringed, Polar suffered harm and would have an interest in obtaining effective relief. This factor does not weigh in favor of finding that jurisdiction here would be reasonable, however. Notably, this is not a situation where Polar would be left without remedy if Delaware could not exercise personal jurisdiction over Suunto. If Suunto was truly not within the reach of any state's long-arm statute, any federal district court could exercise jurisdiction over Suunto. The federal long-arm statute would warrant the exercise of jurisdiction over Suunto because it has minimum contacts with the United States as a whole, and the United States' exercise of jurisdiction over Suunto would not be unfair or unreasonable. Fed. R. Civ. P. 4(k)(2). Rule 4(k)(2) is likely inapplicable here, however, because Suunto consented to jurisdiction in Utah, where ASWO's headquarters, witnesses, and evidence are located. (D.I. 109 at 3); *see Touchcom, Inc. v. Bereskin & Parr*, 574 F.3d 1403, 1415 (Fed. Cir. 2009) (explaining that a defendant can avoid application of 4(k)(2) when it designates a suitable forum in which the plaintiff could have brought the suit). While Suunto's consent is not enough, it appears probable that Utah would have had personal jurisdiction over Suunto at the time of filing. *See Merial Ltd. v. Cipla Ltd.*, 681 F.3d 1283, 1294 (Fed. Cir. 2012) ("[A] defendant cannot defeat Rule 4(k)(2) by simply naming another state; the defendant's burden under the negation requirement entails identifying a forum where the plaintiff could have brought suit—a forum where jurisdiction would have been proper at the time of filing, regardless of consent."). Polar, therefore, has at least one other jurisdiction where it could obtain effective relief.

11

Polar argues that their choice of forum is entitled to consideration. (D.I. 110 at 4). This argument would be relevant when discussing a motion for a venue transfer, but is not a valid consideration when discussing personal jurisdiction over a defendant. Analysis of personal jurisdiction is defendant focused, and is created out of the contacts "that the defendant *himself* creates with the forum State." *Walden*, 134 S. Ct. at 1122. (internal quotes omitted) The Supreme Court also eschews choice of forum when analyzing personal jurisdiction, explaining that "[the state] does not acquire . . . jurisdiction by being . . . the most convenient location for litigation. The issue is personal jurisdiction, not choice of law. It is resolved in the case by considering the acts of the [defendants]." *Shaffer v. Heitner*, 433 U.S. 186, 216 (1977). Even if Polar's choice of forum was entitled to consideration, however, Polar is a Finnish corporation with its principal place of business in Kempele, Finland. (D.I. 110 at 2). Thus, there is no apparent reason why Polar would obtain more effective relief in this forum as opposed to Utah.

Since Polar does not have a particular interest in keeping Delaware as the forum for the dispute, and could obtain effective relief elsewhere, this factor weighs against exercising jurisdiction over Suunto.[4]

### D. The Interstate Judicial System's Interest in Obtaining Convenient and Effective Relief

As a patent infringement action, federal law has exclusive control over the substantive elements of the case. That fact differentiates this case from state law tort claims—particularly

---

[4] In coming to this conclusion, the court is not suggesting that states which might be better forums for the suit, or more clearly have personal jurisdiction, can deprive their sister states of personal jurisdiction. Personal jurisdiction analysis takes into account the defendant's contacts with the forum selected by the plaintiff, and multiple jurisdictions could simultaneously possess personal jurisdiction over the same case in controversy. In this instance, the court is analyzing whether a finding that Delaware lacked personal jurisdiction would prevent Polar from obtaining legal protection. Since Federal Rule of Civil Procedure 4(k)(2) does not apply, and Polar has not demonstrated why Delaware has a particular interest in the case over a sister state, the court finds that Polar's ability to obtain effective legal relief would not be prejudiced by a determination that the Due Process Clause prevents the exercise of personal jurisdiction in Delaware.

those invoking the stream of commerce theory of jurisdiction—which would be controlled by state legislation and case law. This distinction is important, for the threat of forum shopping by either plaintiff or defendant—a practice antithetical to the efficient functioning of the U.S. interstate judicial system—is impossible when each state would apply the same law to the case. Accordingly, pursuing litigation in a different, but jurisdictionally proper forum, would not hamper Polar's ability to find or obtain the same relief as they could here.

The interstate judicial system's interest in this case, then, is affording Polar a forum in which to sue Suunto for patent infringement. Certainly, sales of the allegedly infringing products occurred in Delaware, and as the Federal Circuit recognized, that is enough to establish "minimum contacts" with this forum. Delaware, however, is not the only state that was affected by the products at issue. As Suunto acknowledges by conceding personal jurisdiction in Utah, there is at least one other state that would have an interest in this case. Therefore, Delaware hosting this particular suit cannot be predicated on this being the only district where effective relief is possible.

Another important consideration is the location of witnesses and evidence for the case. *See Caruth v. International Psychoanalytical Ass'n*, 59 F.3d 126, 129 (9th Cir. 1995); *Vermeulen v. Renault, U.S.A., Inc.*, 985 F.2d 1534, 1552 (11th Cir. 1993). In Delaware, individuals and retailers who purchased the allegedly infringing products would be available. However, any witnesses from ASWO's Utah headquarters would have to travel to Delaware, as would any employees who work in the warehouse in Tennessee. In comparison, Polar has no presence in Delaware to make this a convenient forum to redress their concerns. Suunto is not disputing that their products ended up in Delaware, or that sales took place in Delaware. Nonetheless, a number of Suunto's witnesses would still have to travel to Delaware to aid in its defense, while Polar would incur no additional cost from litigating the case in Utah.

The court is conscious that dismissing Suunto from the case could result in two jurisdictions hearing essentially the same case should Polar choose to file another action against Suunto in Utah. The court acknowledges the inefficiency inherent in that result. In the interests of justice, the court could transfer the case, on its own motion, to the District of Utah, where Suunto has admitted that personal jurisdiction could be exercised against them. 28 U.S.C. §1631 ("[If the] court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action . . . to any other such court in which the action . . . could have been brought at the time it was filed or noticed.") Suunto's mere admission that it would be subject to personal jurisdiction in Utah, however, cannot be the basis for transfer; the court must also find that the action could have brought in Utah's district court at the time of filing.

Negotiating and contracting with ASWO personnel, a company operating in Utah, likely forms the requisite contacts with the jurisdiction to make Suunto subject to personal jurisdiction in Utah under both the Due Process clause and Utah's Long-Arm statute. Utah Code Ann. § 78B-3-205 ("[T]he transaction of any business in the state.").

The co-defendants in this case, ASWO and Firstbeat, would not face substantial harm in the transfer either. ASWO has its principal place of business in Utah—creating general jurisdiction in the forum. *See Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011) (identifying "domicile, place of incorporation, and principal place of business as 'paradigm' bases for the exercise of general jurisdiction") (internal citation omitted). The convenience of litigation where ASWO is at home, and where its potential witnesses may be found, assuage any due process concerns. The other co-defendant, Firstbeat, also had a distribution contract with ASWO, and therefore has contacts similar to Suunto in Utah. (D.I. 26 at 2.)

For the reasons stated above, this factor weighs in Suunto's favor, as the production of witnesses and evidence disproportionately affects the defendants if the suit occurred in Delaware, whereas Polar would not be prejudiced by litigating the case elsewhere, such as Utah.

**D.     The Shared Interest of States in Furthering Fundamental Social Policies**

Since, as previously noted, patent law is governed exclusively by federal law, the shared interest of the states is indirect: that the states prevent infractions of federal law from occurring within a state's borders. This dynamic makes the application of this factor difficult in the present case. Though Delaware might have infringing products circulating throughout its state market, other states have the same issue—and likely with the same infringing products. The generic nature of patent infringement occurring across the country prevents one forum—such as Delaware—from claiming a superior interest in a particular infringement case over another state. This is particularly so when neither party in question is a Delaware resident, the shipments to the forum were sporadic (between nine and fourteen units a year) over a seven year period, and the financial benefit was small in proportion to the revenue generated from other fora in the US (totaling $28 million). (D.I. 61–1, Taylor Dep. 52:6–8, 71:14–72:4; D.I. 61-3, Lahtinen Dep. 28:16–18.)

The subject matter of this case involes patent infringement, when most stream-of-commerce cases involve products liability torts. That fact further distances the states' interests in the case at hand. This case does not involve defective water heaters exploding and injuring an Illinois citizen, *Gray v. American Radiator & Standard Sanitary Corp.*, 22 Ill. 2d 432 (1961), or a poorly designed metal-shearing machine which maims an individual's hand in New Jersey. *Nicastro*, 564 U.S. 873. This case asks whether a heartrate monitor produced by Suunto and shipped to the United States violates two patents owned by Polar.

The definite, concrete location of an injury stemming from a defective product (*ie.* Illinois or New Jersey) juxtaposes starkly with a patent infringement case, in which an intangible, constructive injury occurs. The injuries allegedly sustained by Polar would be felt as much in Finland, where the corporate entity 'resides,' as it would in Delaware where the product is sold, or in Utah where the agreement to distribute the allegedly infringing products was forged, or in Tennessee where the products are stored and organized for e-commerce. (D.I. 1 at 1; D.I. 61 at 1–6.) While having Delaware host this lawsuit saves the other states the burden of litigation, such a venue is interchangeable with any other state which suffered similar injuries as those in Delaware. It would be judicially incoherent to conclude, for instance, that if Utah were to host the lawsuit, Delaware's interests would not be vindicated, yet Utah's interests would be vindicated if the suit remained in Delaware. So long as one state oversees the patent litigation process, every state's interest is represented.

Following this reasoning, the shared interests of the states do not extend any further than the litigation of this case occurring somewhere in the United States. As discussed above, the suit can occur in multiple places apart from Delaware. Admittedly, Delaware's exercise of jurisdiction would vindicate the shared interest of the states. Any court's exercise of jurisdiction would accomplish that same result, however. Thus, this factor weighs slightly in favor of exercising jurisdiction over Suunto.

## V. TRANSFER

On its own motion, the court can transfer a case when "there is a want of jurisdiction," and such transfer would be "in the interest of justice." 28 U.S.C. § 1631; *Chavez v. Dole Food Co., Inc.*, No. CV 12-697-RGA-MPT, 2017 WL 1363304, at *4 (D. Del. Apr. 10, 2017) ("It follows that a court's ability to *sua sponte* transfer a matter to a jurisdiction that neither party requests falls

squarely within the meaning of 28 U.S.C. §1631, if that jurisdiction is easily identifiable."). Under § 1631, the court must transfer the action to forum where the action "could have been brought at the time it was filed or noticed." 28 U.S.C. § 1631.

For the reasons previously noted, the court believes that the action could have originally been brought in Utah given ASWO's, Suunto's, and FirstBeat's connections to Utah. The court also finds that the interests of justice and judicial economy favor transfer to the United States District Court for the District of Utah. 28 U.S.C. §1631; *see Goldlawr v. Heiman*, 369 U.S. 463, 467 (1962) ("Congress . . . recognized that 'the interest of justice' may require that the complaint not be dismissed but . . . be transferred in order that the plaintiff not be penalized by . . . 'time-consuming and justice-defeating technicalities'"); *Roman v. Ashcroft*, 340 F.3d 314, 328 (6th Cir. 2003) ("In light of the language of §1631 and its purpose, we therefore conclude that the statute applies to federal courts identifying any jurisdictional defect, regardless of whether it involves personal or subject matter jurisdiction."); Wright, Miller & Cooper, *Federal Practice and Procedure* § 3827 (3d 2007) ("Since the presumption should be in favor of transfer as the normal procedure, dismissal is only appropriate in unusual circumstances."); *Id.* § 3849 ("Transfer to a corporate defendant's place of business is particularly likely in patent or copyright infringement cases."). By transferring this case, the court ensures that the plaintiff's and the interstate judicial system's interest in the case are preserved without violating Suunto's Fourteenth Amendment protections.

## VI. CONCLUSION

The court cannot exercise personal jurisdiction over Suunto. This case exemplifies the "rare situation" where, despite a finding of minimum contacts, "the plaintiff's interest and the state's interest in adjudicating the dispute are so attenuated that they are clearly outweighed by the burden of subjecting the defendant to litigation within the forum." *Beverly Hills Fan*, 21 F.3d at 1568. Accordingly, the court will transfer this action to the United States District Court for the District of Utah.

Dated: August 29, 2017

_____
UNITED STATES DISTRICT JUDGE